**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Deborah Vasquez, | No. CV-22-00662-PHX-SPL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Deborah Vasquez challenges the Commissioner of the Social Security Administration's ("Commissioner" or "Defendant") denial of her Application for Social Security Insurance Benefits under Title II of the Social Security Act ("the Act"). Plaintiff filed a Complaint with this Court seeking judicial review of that denial. (Doc. 1). The Court has reviewed and now addresses Plaintiff's Opening Brief ("OB"), Defendant's Answer ("AN"), Plaintiff's Reply ("Reply"), and the Administrative Record ("AR"). The Court finds the Administrative Law Judge's ("ALJ") decision is supported by substantial evidence and now affirms.

**I.    BACKGROUND**

Plaintiff was involved in a car accident on July 1, 2017. (AR 59). She sustained fractures to her left ankle at the distal tibia and the distal fibula that required surgery. (AR 444). Subsequently, she developed chronic regional pain syndrome ("CRPS"). (AR 579). Plaintiff alleges neuropathy, chronic pain, and stiffness in the limb. (OB 2). She also

testified to experiencing migraines and dizziness. (AR 58–59).

Plaintiff filed the present application for Disability Insurance Benefits on November 29, 2017, alleging disability as of July 1, 2017[1]. (AR 24, 313, 320). The Social Security Administration ("SSA") denied her application at the initial and reconsideration levels of administrative review. (AR 165, 176). Plaintiff then requested a hearing before an ALJ, which was held on March 8, 2021. (AR 43, 199). Following the hearing, the ALJ issued a decision finding Plaintiff "not disabled."[2] (AR 36).

In his decision, the ALJ found that Plaintiff had severe[3] impairments of status post open fracture of tibia and fibula and left ankle dysfunction. (AR 27). However, the ALJ found Plaintiff's neuropathy, headaches, CRPS, sciatic low back pain, partial empty sella syndrome ("PESS"), and obesity non-severe. (AR 27–29). The ALJ also found Plaintiff's depression non-severe as it "does not cause more than minimal limitation in the [Plaintiff's] ability to perform basic mental work activities . . . ." (AR 29). Despite her impairments, the ALJ determined Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) except for the following limitations:

> [Plaintiff] can occasionally use foot controls with the left lower extremity. She can occasionally [climb] ramps/stairs but never climb ladders, ropes or scaffolds. She can frequently stoop and occasionally balance, kneel, crouch and crawl. In addition, she could . . . occasionally be exposed to extreme cold, vibration, unprotected heights and moving mechanical parts.

(AR 30). Based on the above and testimony from a neutral vocational expert ("VE"), (AR 61–70) the ALJ found Plaintiff could perform her past relevant work as a security guard and was therefore not disabled. (AR 34–36). The Appeals Council denied Plaintiff's

---

[1] Plaintiff's original applications listed her alleged onset date as April 1, 2017, but she amended her alleged onset date through counsel at the ALJ hearing. (AR 60, 320).

[2] "Disability" is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted for a continuous period of not less than 12 months." 42 U.S.C. § 423 (d)(1)(A).

[3] "[A]ny impairment or combination of impairments which significantly limits [a person's] physical or mental ability to do basic work activities" is considered "severe." 20 C.F.R. § 404.1520 (c)

request for review and the ALJ's decision became final. (AR 1–4).

## II. THE SEQUENTIAL EVALUATION PROCESS

In determining whether a claimant is disabled for the purposes of the Act, the ALJ must follow a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at the first four steps but that burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step one, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a severe medically determinable impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or is medically equivalent to an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is disabled. 404. 20 C.F.R. § 404.1520(a)(4)(iii). If not, the analysis proceeds to step four where the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can perform her past relevant work, she is not disabled. *Id*. If she cannot, the analysis proceeds to the fifth and final step, where the ALJ determines if the claimant can perform any other work in the national economy based on her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant cannot, she is disabled. *Id.*

## III. LEGAL STANDARD

When determining whether to reverse the Commissioner's decision, this Court only reviews issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court will affirm the Commissioner's final ruling unless it is based on legal error or lacks the support of substantial evidence. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "more than a mere scintilla but less than a preponderance. It is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Id.* (internal quotation marks and citations omitted). Though the Court must consider the record as a whole, "the key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled." *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

**IV.   DISCUSSION**

Plaintiff alleges three grounds for appeal. First, Plaintiff alleges the ALJ failed in finding her CRPS non-severe at step two of the evaluation process. (OB 1). Second, Plaintiff argues the ALJ improperly evaluated the medical opinions. (OB 1). Finally, Plaintiff alleges the ALJ erroneously rejected her symptom testimony. (OB 1). The Court addresses each of these issues in turn.

1. THE ALJ DID NOT ERR IN FINDING PLAINTIF'S CRPS NON-SEVERE.

<u>Legal Standard</u>

At step two of the sequential evaluation process, the ALJ must determine whether Plaintiff suffers from a severe impairment or combination of impairments. *Smolen v. Chater*, 80 F.3d 1273, 1290–91 (9th Cir. 1996). This is a *de minimis* screening instrument used to dispose of meritless claims. *Id.* at 1291. "An impairment or combination of impairments may be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (internal quotation marks omitted); *see* 20 C.F.R. § 404.1520(c). "Basic work activities are 'abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling.'" *Smolen*, 80 F.3d at 1273 (citing 20 C.F.R. § 404.1520(b) (2014)). In determining the severity of the impairments, the ALJ considers the claimant's testimony, treatment notes, imaging, reports of daily activities, opinion evidence, and any

- 4 -

other statements or observations in the record. *See* 20 C.F.R. § 404.1529; SSR 16-3p; 20 C.F.R. § 404.1520c(b)(2).

## Analysis

Plaintiff alleges the ALJ erred in finding her CRPS non-severe because she was "diagnosed with the disorder throughout the disability period and exhibits the requisite symptoms of the disorder under SSR 03-2p." (OB 3). Plaintiff fractured her left ankle during the car accident. This fracture and subsequent surgery led to Plaintiff developing CRPS.[4] (OB 14). The ALJ determined that "there is no specific evidence supporting the CRPS significantly limited [Plaintiff's] ability to perform basic work activity." (AR 28). In support of this conclusion, the ALJ cites treatment records demonstrating Plaintiff "was generally in no acute distress on objective physical examination." (AR 28, 31 citing AR 442-546, 571-603). The ALJ also found that the "medical record does not support the degree of limitations alleged by the claimant and supports overall improvement in her condition." (AR 31).

Plaintiff argues that had the ALJ found her CRPS severe *and* limited her to sedentary work, vocational guideline 201.14 "would direct a finding of disabled." (Reply 4–5). Defendant contends that because the ALJ found Plaintiff's status post open fractures and left ankle dysfunction severe and considered continuing pain related to those impairments, "it seems immaterial whether the ALJ identified the severe impairment as CRPS or an orthopedic injury." (AN 5 citing AR 27, 30–34). The Court agrees.

Plaintiff's argument relies on the assumption that the ALJ finding her CRPS severe would result in a sedentary RFC. (Reply 4–5). But this is not the case. When crafting the RFC, the ALJ considers the combined effect of all the claimant's impairments, not just her

---

[4] "CRPS is a chronic pain syndrome most often resulting from trauma to a single extremity. It can also result from diseases, surgery, or injury affecting other parts of the body. The most common acute clinical manifestations include complaints of intense pain and findings indicative of autonomic dysfunction at the site of the precipitating trauma. Later, spontaneously occurring pain may be associated with abnormalities in the affected region involving the skin, subcutaneous tissue, and bone. It is characteristic of this syndrome that the degree of pain reported is out of proportion to the severity of the injury sustained by the individual. When left untreated, the signs and symptoms of the disorder may worsen over time." *Titles II & XVI: Evaluating Cases Involving Reflex Sympathetic Dystrophy Syndrome/Complex Reg'l Pain Syndrome*, SSR 03-2P (S.S.A. Oct. 20, 2003).

severe impairments. *See Smolen v. Chater*, 80 F.3d 1273, 1289–90 (9th Cir. 1996); *see also* 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523, 416.923; *Vasquez v. Astrue*, 572 F.3d 586, 594–97 (9th Cir. 2009). Therefore, "[t]he RFC therefore *should* be exactly the same regardless of whether certain impairments are considered severe or not." *Buck v. Berryhill,* 869 F.3d 1040, 1049 (9th Cir. 2017) (internal quotation omitted).

When discussing Plaintiff's RFC, the ALJ considered the impact of Plaintiff's post open fracture of tibia and fibula and left ankle dysfunction. (AR 31). The ALJ also addressed Plaintiff's complaints of pain and discomfort in her left foot, as well as her reports of limited range of motion. (AR 31–32). As the ALJ resolved step two in Plaintiff's favor and addressed Plaintiff's CRPS symptoms in the RFC, any alleged error in the ALJ's failure to find Plaintiff's CRPS severe would be harmless. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." (internal quotation marks and citation omitted)).

2. THE ALJ PROPERLY ADDRESSED THE MEDICAL OPINIONS OF RECORD.

<u>Legal Standard</u>

In January 2017, the SSA amended the regulations concerning the evaluation of medical opinion evidence. *See Revisions to Rules Regarding Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). The new regulations apply to applications filed on or after March 27, 2017, and are therefore applicable here. The new regulations provide in relevant part as follows:

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources . . . .

20 C.F.R. § 416.920c(a). Accordingly, the ALJ was not required to adhere to a hierarchy of medical opinions but rather to articulate the persuasiveness of medical opinions using factors set forth in the regulations. 20 C.F.R. §§404.1520c(a)–(b). "The most important

factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability . . . and consistency."[5] 20 C.F.R. §§404.1520c(a). Regarding the "supportability" factor, the new regulations explain that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), . . . the more persuasive the medical opinions . . . will be." *Id.* § 404.1520c(c)(1). Regarding the "consistency" factor, the "more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(2)

In *Woods v. Kijakazi*, the Ninth Circuit confirmed that the "recent changes to the Social Security Administration's regulations displace our longstanding case law requiring an ALJ to provide 'specific and legitimate' reasons for rejecting an examining doctor's opinion." 32 F.4th 785, 787 (9th Cir. 2022).  Now, an ALJ's decision to discredit any medical opinion "must simply be supported by substantial evidence." *Id.*  However, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.  The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings." *Id.* at 792.  Although an "ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records . . . the ALJ no longer needs to make specific findings regarding these relationship factors . . . ." *Id.*

///

///

---

[5] Other factors that may be considered by the ALJ in addition to supportability and consistency include the provider's relationship with the claimant, the length of the treatment relationship, the frequency of examinations, the purpose and extent of the treatment relationship, and the specialization of the provider.  20 C.F.R. § 416.920c(c).

The ALJ's Decision

Dr. Carol Hutchinson examined Plaintiff's claim at the initial stage of disability review. (AR 97–100). In her May 2018 determination, Dr. Hutchinson opined that Plaintiff could perform light work and lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk about six hours and sit about six hours in an eight-hour workday; frequently stoop; occasionally climb ramps or stairs, kneel, balance, crouch, crawl, and use the left foot for foot controls; never climb ladders, ropes, or scaffolds; and should avoid concentrated exposure to extreme cold and vibration and even moderate exposure to hazards. (AR 97–100). State agency consultant Martha Goodrich examined Plaintiff's claim at the reconsideration stage. (AR 137–140). In November 2018, Dr. Goodrich adopted Dr. Hutchinson's findings. (AR 137–140).

The ALJ found Dr. Hutchinson and Dr. Goodrich's opinions persuasive because they were "generally consistent with the balance of the record." (AR 34). Specifically, the ALJ found that the medical record "supports improvement in [Plaintiff's] condition." (AR 34). In support of this conclusion, the ALJ cites medical records noting Plaintiff was in no acute distress and had normal strength, coordination, range of motion, sensation, gait, and motor tone with no rigidity or spasticity in her left extremity. (AR 32–33 citing AR 547–49, 578–79, 569, 586, 608, 610, 612, 644–45, 723, 728, 731, 733, 740778–780, 816, and 819). The ALJ also noted that Plaintiff swam and took care of her 83-year-old mother. (AR 33 citing AR 549).

Analysis

1. The ALJ Did Not Err in Refusing to Order a Consultive Examination.

As a preliminary matter, Plaintiff alleges that the ALJ failed to assist her in obtaining a functional assessment of her impairments. (OB 19). Plaintiff requested a consultive evaluation to assess the severity of her functional limitations on January 28, 2021, five weeks before the hearing. (AR 414). In her request, Plaintiff wrote that "no treating doctor has given an opinion towards [Plaintiff's] functional limitations and there are no examining source opinions in this file. Therefore, I am writing to request that the extent of this

claimant's physical impairment be investigated by a consultative evaluator." (AR 414). The ALJ did not order a consultive examination and instead denied Plaintiff's motion in the written opinion. (AR 25).

Though Plaintiff is correct that ALJs frequently order consultive examinations, (OB 19), Plaintiff does not have an affirmative right to a consultive examination. *Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001). The Ninth Circuit has found that the Commissioner "has broad latitude in ordering a consultive examination." *Id.* The ALJ's duty to develop the record may require him to order a consultive examination "when such an evaluation is necessary to enable the ALJ to make the disability determination," such as when the record is insufficient or ambiguous. *Id.; see also Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020). Here, ALJ had over 1,000 pages of medical records in addition to two prior administrative findings regarding Plaintiff's impairments. The record was sufficient to allow the ALJ to make a disability determination without a consultive examination. The Court finds no error.

2. The ALJ Did Not Err in Relying on Dr. Hutchinson and Dr. Goodrich's Opinions.

Plaintiff argues the ALJ improperly relied on "the opinions of the non-treating, non-examining DDS consultants who did not have the benefit of more than two years of clinical records and objective evidence." (OB 17). But there is always some time lapse between a consultant's report and the ALJ's hearing and decision. *Owen v. Saul*, 808 F. App'x 421, 423 (9th Cir. 2020). As the social security regulations do not impose a time limit on the opinions of state agency physicians, the ALJ is entitled to rely on such opinions even if subsequent evidence enters the record. *Id.*

Plaintiff also argues that the ALJ relied on "a few cherry-picked examinations that were 'generally normal'" to find the state agency consultant opinions persuasive. (OB 18 citing AR 34). Specifically, Plaintiff argues that the ALJ "simply fails to consider that chronic pain (secondary to CRPS) is [Plaintiff's] issue." (OB 21). Citing treatment notes from February to April 2018, the ALJ found Plaintiff "had normal motor tone bilaterally, no rigidity or spasticity. She had 5/5 strength bilaterally." (AR 32 citing AR 612,

724,728,731). Plaintiff argues that notes from those visits also show that Plaintiff experienced pain, ambulated with a cane, and had left foot paresthesia. (OB 18 citing AR 612, 724,728,731). But Plaintiff's physical examinations were normal despite these subjective complaints. (AR 612, 724,728,731). Additionally, there is no evidence in the record that Plaintiff's cane was medically necessary as no doctor prescribed its use. The ALJ did not err in relying on objective medical evidence that is representative of the larger record.

Next, Plaintiff takes issue with the ALJ's citation to four physical exams from 2018. (OB 18). The ALJ found that findings from Plaintiff's May, July, and August 2018 exams "were generally normal. The claimant was pleasant, oriented, alert and in no acute distress. The claimant had no clubbing or edema of the extremities and non-focal neurologic exam." (AR 33 citing AR 774, 778, 780). Plaintiff argues that these findings came "from a primary care provider [who] was treating [Plaintiff] for general medical conditions such as follow up after a hospital visit, regarding lab work, and to get referrals to other doctors." (OB 18 citing AR 774, 778, 780.). But Plaintiff does not contest the accuracy of these findings, nor does she cite any case law or regulations stating only specialists may observe or comment upon Plaintiff's symptoms. The observations from Plaintiff's primary care physician qualify as "other medical evidence" under 20 C.F.R. § 404.1513(a)(3). The ALJ was therefore entitled to rely upon them when making his determination. *See Garrison,* 759 F.3d at 1011 (stating the ALJ relies on all the "medical and other evidence in [the] case record" when determining a claimant's RFC).

Plaintiff also argues that the ALJ's reliance on normal examination findings from Plaintiff's neurologist was inappropriate. (OB 18). The ALJ found that Plaintiff's treatment notes from June 2020, July 2020, and January 2021 were "generally normal" as Plaintiff had "normal tone bilaterally, 5/5 strength bilaterally, intact coordination, intact sensory and intact gait." (AR 33 citing AR 789, 816, 819). Plaintiff argues her neurologist was treating her chronic migraine condition, not her left lower extremity. (AR 18). Again, Plaintiff fails to demonstrate why records from a treating physician related to the impairment at issue do

not qualify as medical evidence upon which the ALJ could rely.

Finally, Plaintiff argues that her "ability to sustain any standing or walking is significantly impaired" by her CRPS. (OB 3). Defendant contends that the ALJ reasonably concluded the Plaintiff's symptoms improved. (AN 7). The Court agrees. Though Plaintiff experienced mild left ankle and foot edema, many of her physical exams from 2018 onward document normal strength, coordination, sensation, gait, and motor tone with no rigidity or spasticity. (AR 32–33 citing AR 547–49, 578–79, 569, 586, 608, 610, 612, 644–45,723, 728, 731,733, 740778–780, 816, and 819). Though Plaintiff used a cane, there is no evidence in the record that her cane was medically necessary. In January 2018, Plaintiff reported being weight bearing, walking short distances without an assistive device, and attended her doctor's appointment without a boot. (AR 569, 586, 645). As the ALJ's decision represents a reasonable interpretation of the record evidence, the Court finds no error. *Thomas*, 278 F.3d at 954.

3. DID THE ALJ ERRONEOUSLY REJECT PLAINTIFF'S SYMPTOM TESTIMONY?

<u>Legal Standard</u>

An ALJ must perform a two-step analysis to determine the credibility of a claimant's pain and symptom testimony. *Lingenfelter v. Astrue*, 504 F.3D 1028, 1035–36 (9th Cir. 2007). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 1036. If the claimant meets this burden and there is no evidence of malingering, the ALJ may "reject the claimant's testimony about the severity of [the] symptoms" only by "providing specific, clear, and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 488–89 (9th Cir. 2015). The ALJ's assessment must be supported by the record and sufficiently specific to ensure a reviewing court that [he] did not "arbitrarily discredit" the claimant's subjective testimony. *Thomas v. Barnhart*, 278 F.3d 948, 958 (9th Cir. 2002).

///

The ALJ's Decision

In his decision, the ALJ recounted Smith's symptom testimony. (AR 31). Plaintiff testified that she had not worked since her accident because she had "not been able to get out of [her] boot" and could not drive on or operate machinery on her medications. (AR 53, 54). At the time of the ALJ hearing, Plaintiff used a cane and left ankle boot. (AR 48). Plaintiff testified that she could walk for about thirty minutes before needing to rest due to the pain. (AR 55). Plaintiff lives by herself. (AR 55). Plaintiff cooks for herself and picks up around the house. (AR 56). Her daughter helps her with shopping. (AR 55).

Plaintiff also testified to experiencing dizziness when she gets up or bends over to brush her teeth. (AR 56). Her doctor believes the dizziness is a side effect of the medication. (AR 56). Plaintiff testified that she has been experiencing migraine headaches since her accident during which her head hit the rearview mirror. (AR 58–59). Plaintiff stated that she experienced three to four headaches every two to three weeks. (AR 58). She takes over-the counter medication for the migraines which she claimed did not help. (AR 59). Plaintiff testified that Botox shots "take[] the edge off" her migraines. (AR 56–59). As for mental health impairments, Plaintiff testified that she takes antidepressants which "take[] the edge off, a little bit." (AR 59).

Through counsel, Plaintiff alleged worsening neuropathy in her left foot since the car accident. (AR 49–50). Plaintiff also alleged developing neuropathy in her right foot resulting from lumbar spine issues. (AR 50). Plaintiff also alleged that her partial empty sella syndrome ("PESS")[6] and obesity contributed to her migraines, dizziness, and balance issues. (AR 52). Plaintiff's attorney argued her conditions would meet the 12-month durational requirement because her "symptoms were getting worse, not better, even though

---

[6] "Empty sella syndrome is a condition in which the pituitary gland shrinks or gets flattened. . . When the pituitary gland shrinks or becomes flattened it cannot be seen on the MRI scan making it look like an empty sella. This is called as empty sella syndrome. Partial empty sella is suggestive that some of the pituitary gland is visible on the MRI scan."https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3990803/#:~:text=When%20the%20pituitary%20gland%20shrinks,two%20types%2C%20primary%20and%20secondary.

they were expected to get better." (AR 50).

The ALJ determined that while Plaintiff's medically determinable impairments "could reasonably be expected to cause some of the alleged symptoms," her statements concerning the intensity, persistence and limiting effects of these symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (AR 31). Specifically, the ALJ found that with respect to Plaintiff's status post open fracture of tibia and fibula and left ankle dysfunction, "the medical record does not support the degree of limitations alleged by the [Plaintiff] and supports overall improvement in her condition." (AR 31).

<u>Analysis</u>

Plaintiff alleges the ALJ failed to provide clear and convincing reasons for discounting her symptom testimony. (OB 22). Defendant contends that the ALJ reasonably determined the Plaintiff's symptom allegations were inconsistent with her documented improvement, generally normal exam findings, daily activities, and failure to avail herself to recommended treatment. (AN 8).

1. The Court Can Readily Discern Which Aspects of Plaintiff's Testimony the ALJ Found Inconsistent with the Record.

Plaintiff argues the ALJ failed to "link specific symptom testimony the ALJ finds not credible to specific and conflicting information in the medical evidence of record." (OB at 22). But the ALJ is not required to perform a "line-by-line exegesis of the claimant's testimony" to meet the clear and convincing standard. *Lambert v. Saul,* 980 F.3d 1266, 1277 (9th Cir. 2020). Moreover, if an ALJ's decision is made "with less than ideal clarity, a reviewing court will not upset the decision on that account if [his] path may reasonably be discerned*." Alaska Dept. of Edvtl. Conservation v. E.P.A.*, 540 U.S. 461, 497 (2004); *see Brown-Hunter*, 806 F.3d at 492 (applying this standard to social security).

Here, the ALJ noted Plaintiff's testimony that she uses a cane and ankle boot, could not walk without the boot, could only walk for thirty minutes with the boot, and could not drive at all. (AR 31). The ALJ also acknowledged Plaintiff's assertion that she could not

move her foot, had no feeling in her foot, and could not function. (AR 30 citing AR 393). The ALJ then identified specific medical records and the daily activities he deemed inconsistent with Plaintiff's stated limitations. (AR 31–34). As the Court can draw a reasonable inference that the ALJ finds Plaintiff's daily activities inconsistent with the aforementioned limitations, the Court will not disturb the determination on this ground. *Id.*

2. The ALJ's Determination That Plaintiff's Symptom Testimony Conflicts With Record Evidence Is Supported By Substantial Evidence.

Plaintiff testified that her foot "hurts all day long." (AR 55). The ALJ found Plaintiff's allegations of disabling pain at odds with the medical record. (AR 31). The ALJ noted that many of Plaintiff's physical examinations from 2018–2021 show no acute distress, 5/5 strength, normal coordination, intact sensation, intact gait, and normal motor tone with no rigidity or spasticity. (AR 32–34 citing 608, 610, 612, 644–45,723, 728, 731,733, 740778–780, 816, and 819). Though Plaintiff is correct that the ALJ cannot require medical support to prove the severity of the pain, "[o]bjective medical evidence . . . is a useful indicator . . . in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work." 20 C.F.R. § 404.1529

Contrary to Plaintiff's assertion that her condition had not improved and was in fact getting worse, her doctor found that she was "slowly improving" and overall doing well on October 27, 2017. (AR 579). Despite Plaintiff's claim that she does not remove her boot, (AR 54), her doctor reported that Plaintiff was "out of her boot" on January 16, 2018. (AR 569). Treatment notes from January 30, 2018 state Plaintiff had begun to walk short distances in her home without her assistive device. (AR 645). Substantial evidence supports the ALJ's conclusion that Plaintiff's condition improved with treatment.

The ALJ also determined Plaintiff's daily activities of swimming and caring for her mother conflicted with her symptom testimony. (AR 32). Plaintiff argues that the ALJ "failed to ask even one question about [Plaintiff's] activities related to her mother" and that it was therefore unreasonable to discredit her testimony. (OB 22). But in her function

report, Plaintiff stated "I can't move my foot and I have no feeling in it. I can't function." (AR 393). It is not unreasonable for the ALJ to determine that an individual who "can't function" would be unable to care for another individual in any capacity. "[T]he ALJ may consider inconsistencies . . . between the testimony and the claimant's conduct   . . . and whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012).

Finally, Plaintiff also argues that the ALJ failed to consider her dizziness. (OB 23). But the ALJ specifically commented on Plaintiff's dizziness in his decision and addressed multiple treatment records with normal neurological findings. (AR 33 citing AR 7, 10,16, 574, 577, 737, 740, 774, 778, 780).  The Court finds no error.

V.   **CONCLUSION**

Substantial evidence supports the ALJ's no disability determination.

**IT IS THEREFORE ORDERED affirming** the March 24, 2021 decision of the Administrative Law Judge (AR 24–36), as upheld by the Appeals Council (AR 1–4).

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly and terminate this action.

Dated this 5th day of June, 2023.

Honorable Steven P. Logan
United States District Judge